# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

ASPHALT PAVING SYSTEMS, INC.,

    Plaintiff,

    v.

BRANTLEY COUNTY and GWES, LLC,

    Defendants.

5:25-CV-2

## ORDER

Before the Court are two motions: Defendant GWES, LLC's motion to dismiss the amended complaint, dkt. no. 37; and Plaintiff Asphalt Paving Systems' motion to dismiss Defendant Brantley County's amended counterclaim, dkt. no. 51. Both motions have been thoroughly briefed, dkt. nos. 37, 41, 46, 51, 52, 57, 59, and are ripe for review. For the reasons given below, Defendant GWES, LLC's motion to dismiss the amended complaint, dkt. no. 37, is **GRANTED in part** and **DENIED in part**, and Plaintiff Asphalt Paving Systems' motion to dismiss Defendant Brantley County's amended counterclaim, dkt. no. 51, is **DENIED.**

**BACKGROUND**[1]

The present action stems from a contract dispute between Plaintiff Asphalt Paving Systems ("APS") and Defendants Brantley County ("the County") and GWES, LLC ("GWES"). See generally Dkt. No. 35. According to the first amended complaint, in May 2024, APS and the County entered into a contract under which APS would be the prime contractor for a road resurfacing project ("the project"). Id. ¶¶ 8—10. Pursuant to that contract, APS was to provide "roadway surface treatment materials and service" to the County in return for a total sum of $1,349,989.07. Id. ¶ 8.

Relatedly, the County also entered into a contract with GWES— the County's engineer on the project.[2] Id. ¶ 12. Under this

_____

[1] At this procedural posture, the Court must "accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff[.]" Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016). The lens is similar when the Court analyzes a motion to dismiss a counterclaim; the Court accepts the factual allegations in the counterclaim as true and takes them in the light most favorable to the counterclaimant. Allstate Fire & Cas. Ins. Co. v. Mankin, No. CV 223—096, 2024 WL 3165306, at *4 (S.D. Ga. June 25, 2024) (quoting Great Am. Assurance Co. v. Sanchuk, LLC, No. 8:10-CV-2568-T-33AEP, 2012 WL 195526, at *2 (M.D. Fla. Jan. 23, 2012)).
[2] The amended complaint references GWES and the County's "professional services agreement" and its incorporated proposal, which was filed as an attachment to GWES's reply in support of its motion to dismiss the original complaint. Id. ¶ 12 (citing dkt. no. 27-1 at 6). The amended complaint also references the "invitation for bid documents," which APS filed as an attachment to its brief in opposition to GWES's first motion to dismiss. Id. ¶ 13 (citing dkt. no. 18 at 30). An exhibit attached to the pleadings or a motion to dismiss may be considered without converting a motion to dismiss into a motion for summary judgment "if the document is (1) central to the plaintiff's claims; and (2)

contract, GWES was to inspect, test, and review APS's work on the project. Id. ¶ 12. GWES was also tasked with supervising the construction process and reviewing and submitting various financial records associated with the project. Id. ¶¶ 11-14. According to the amended complaint, GWES purportedly represented that it "would objectively and reasonably review APS's work product and payment applications and recommend the County pay APS if such work was correctly performed." Id. ¶¶ 15, 18, 63.

APS alleges that it relied upon these representations in performing its work on the project. Id. ¶¶ 16, 64. More specifically, APS contends that, in reliance on GWES's representations, it performed its work on the project through July 2024 and received partial payment for that work. Id. ¶¶ 16, 18-19, 64. APS alleges that it then proceeded to complete all of its

---

undisputed, meaning that its authenticity is not challenged." Johnson v. City of Atlanta, 107 F.4th 1292, 1298-99 (11th. Cir. 2024). Defendants do not challenge the authenticity of the documents referenced in the complaint. Further, the documents are central to Plaintiff's claims, as they concern 1) the contract between GWES and the County which Plaintiff seeks to enforce and 2) the bidding process for the road resurfacing project at issue in this action. Dkt. Nos. 37, 46; Dkt. No. 27-1 at 6; Dkt. No. 18 at 30. In fact, GWES is actually the party which filed the "professional services agreement" which APS presently relies upon. Dkt. No. 27-1 at 6. While the Court notes that these documents are not attached to the present complaint or the pending motions, these documents are nonetheless part of the record through this case's procedural history and may be considered with respect to GWES's motion to dismiss. See Harrell v. Batten, No. 5:24-CV-74, 2026 WL 458299, at *2 (S.D. Ga. Feb. 18, 2026) (considering documents attached to previous filings which were referenced in the complaint).

remaining work on the project in accordance with the required project specifications and its contract with the County. Id. ¶¶ 20-23. On July 24, 2024, APS submitted its final invoice for the project, which requested payment of $874,314.35. Id. ¶ 20.

According to APS, it was entitled to payment within thirty days of invoicing. Id. ¶ 23. APS claims, however, that GWES instead advised the County not to pay APS in full, even though APS's work on the project was allegedly complete and APS had submitted its final payment application. Id. ¶ 24. This was, according to APS, pursuant to GWES's "undisclosed agenda" regarding APS and its paving process, in which GWES would falsely claim APS failed to comply with project specifications knowing that the County would rely on these claims to withhold payment. Id. ¶¶ 24, 27-28, 69-73. APS claims that, even after APS sent multiple demands for payment to the County, the County still owes it a balance of $516,958.98 pursuant to the contract. Id. ¶¶ 25-26. APS also contends that GWES threatened APS, stating that, should APS continue to pursue payment, GWES would undermine APS's ability to contract further work in Georgia and GWES would contact other governmental agencies in the state to convince them not to use APS's paving processes in further public construction projects. Id. ¶ 29.

In the amended complaint, APS seeks monetary damages for breach of contract as to both Defendants (Counts I and III), an

4

alleged violation of the Georgia Prompt Pay Act as to the County (Count II), and fraud as to GWES (Count IV). Dkt. No. 35.

In response, the County counterclaimed for breach of contract (Count I) and attorneys' fees (Count II). Dkt. No. 47 ¶¶ 11-23. In the amended counterclaim, the County alleges that APS, despite its contractual obligation to provide defect-free road resurfacing work in accordance with industry standards, failed to properly apply a "leveling course" to its road surfacing work. Id. ¶¶ 2-6. The County contends improper application of a leveling course can lead to roadway defects, some of which the County alleges have begun to appear in the roadway resurfaced by APS. Id. ¶¶ 6-10. The County claims that it notified APS of the defects in its work and the resulting defects before this action was initiated and gave APS an opportunity to inspect and remedy the defects without litigation, but APS refused to take responsibility or remedy the purported defects. Id. ¶¶ 15-20. Accordingly, the County now seeks recovery of at least $1,499,984.72, the lowest estimated cost of work needed to correct the defective roadway, alongside attorneys' fees and costs under O.C.G.A. § 13-6-11. See generally id. Now before the Court are GWES's motion to dismiss Counts III and IV of APS's amended complaint, dkt. no. 51, and APS's motion to dismiss Count II of the County's amended counterclaim, dkt. no. 52.

**LEGAL STANDARD**

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." Mankin, 2024 WL 3165306, at *4 (quoting Sanchuk, 2012 WL 195526, at *2). Under Federal Rule of Civil Procedure 8, a plaintiff or counterclaimant's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To determine whether this requirement is satisfied, a court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). Legal conclusions, on the other hand, are not entitled to the same presumption of truth; the Court should not accept allegations as true if they merely recite the elements of a claim and declare that they are met. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Instead, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

At the motion to dismiss stage, the key inquiry is whether the complaint or counterclaim contains sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); Mankin, 2024 WL 3165306, at *4. This means that the claimant must plead sufficient factual information to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Importantly, this does not impose a probability requirement on claimants, but a complaint does need to give rise to "'more than a sheer possibility' that the plaintiff's allegations are true." Gissendaner v. Comm'r, 803 F.3d 565, 568 (11th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

### DISCUSSION

GWES moves to dismiss Counts III and IV of APS's amended complaint under Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1 for failure to state a claim. Dkt. No. 37 at 1. APS moves to dismiss Count II of the County's amended counterclaim, also citing Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1. Dkt. No. 51 at 1. Based on the arguments presented in the parties' briefing, alongside governing law, the Court **GRANTS in part** and **DENIES in part** GWES's motion, dkt. no. 37, and **DENIES** APS's motion, dkt. no. 47.

### I.   GWES's Motion to Dismiss

GWES makes two primary arguments in its motion to dismiss APS's amended complaint. See generally Dkt. Nos. 37, 37-1. First, GWES claims that APS has not plausibly alleged that APS was a

third-party beneficiary of GWES's contract with the County, leaving APS without the ability to enforce that agreement. Dkt. No. 37-1 at 3–5. Second, GWES cites the heightened pleading standard for fraud claims and contends that APS fails to allege sufficient facts to satisfy that standard. Id. at 5–7. The Court holds that APS's allegations are sufficient to survive dismissal of the third-party breach of contract claim, but APS's fraud claim is not sufficiently pled.

### A.    Count III: APS's Third-Party Breach of Contract Claim

In Count III, APS contends that it was a third-party beneficiary to the contract between the County and GWES and pursues a breach of contract claim against GWES by virtue of this alleged third-party status. Dkt. No. 35 ¶¶ 49–60. This breach of contract claim is to be analyzed pursuant to general rules of pleading in federal courts—not a heightened standard. Nicholson v. Waste Mgmt., LLC, No. CV423-295, 2024 WL 4171375, at *6 (S.D. Ga. July 31, 2024) (applying Federal Rule of Civil Procedure 8's standard to breach of contract claim), report and recommendation adopted, 2024 WL 3952166 (Aug. 27, 2024). Under Georgia's statutory scheme governing contracts, the general rule is that "an action on a contract 'shall be brought in the name of the party in whom the legal interest in the contract is vested[.]'" Andrade v. Grady Mem'l Hosp. Corp., 707 S.E.2d 118, 121 (Ga. Ct. App. 2011) (citing O.C.G.A. § 9-2-20(a)). However, O.C.G.A. § 9-2-20(b) outlines an

exception to this general rule, under which "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." For a third party to have standing to bring an action as a "third-party beneficiary" within the meaning of O.C.G.A. § 9-2-20(b),[3] "it must appear clearly on the face of the contract that it was intended for the benefit of the third party." Andrade, 707 S.E.2d at 121–22 (citing Crisp Reg'l Hosp. v. Oliver, 621 S.E.2d 554 (Ga. Ct. App. 2005); Miree v. United States, 249 S.E.2d 573, 579 (Ga. 1978)). In other words, "[t]here must be a promise by the promisor to the promisee

---

[3] Georgia courts often refer to the ability to bring a third-party breach of contract cause of action under O.C.G.A. § 9-2-20(b) as "standing" to enforce that contract. Andrade, 707 S.E.2d at 122; see also Vicknair v. Hartford Ins. Co. of the Midwest, No. 25-CV-81155, 2025 WL 4095740, at *2 (S.D. Fla. Dec. 31, 2025) (distinguishing between contractual standing and constitutional standing), report and recommendation adopted, 2026 WL 256398 (Jan. 30, 2026); Jones v. City of Atlanta, 908 S.E.2d 519, 525 n.11 (Ga. 2024) (distinguishing between statutory standing and constitutional standing (citing Oldham v. Landrum, 870 S.E.2d 82, 88 (Ga. Ct. App. 2022) (Pinson, J., concurring in part and dissenting in part))). Put plainly, "[c]ontractual standing is distinct from Article III standing and does not implicate subject-matter jurisdiction. Article III standing speaks to the power of a court to adjudicate a controversy; contractual standing speaks to a party's right to relief for breach of contract." SM Kids, LLC v. Google LLC, 963 F.3d 206, 211 (2d Cir. 2020). GWES's arguments about whether APS is an intended third-party beneficiary of the GWES-County contract goes to the merits of the dispute, not this Court's power to hear the dispute. Dkt. No. 37 ¶ 5; Vicknair, 2025 WL 4095740, at *2 (same). Accordingly, the Court will analyze GWES's arguments regarding Count III as "merits-based attack[s] on contractual standing pursuant to Fed. R. Civ. P. 12(b)(6)" without casting doubt on whether the requirements for Article III constitutional standing are met. Dkt. No. 37 ¶ 5; Vicknair, 2025 WL 4095740, at *2 (same).

to render some performance to a third person and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary." S.E. Grading, Inc. v. City of Atlanta, 324 S.E.2d 776, 779 (Ga. Ct. App. 1984) (citations omitted); see also Malta Constr. Co. v. Henningson, Durham & Richardson, Inc., 694 F. Supp. 902, 908 (N.D. Ga. 1988) (same). "The mere fact that [the third party] would benefit from performance of the agreement is not alone sufficient." Andrade, 707 S.E.2d at 122 (citing Miree, 249 S.E.2d at 579).

GWES contends that APS has not pled sufficient facts to establish that APS was an intended third-party beneficiary of the contract between GWES and the County, dkt. no. 37-1 at 3–5, but APS argues otherwise, dkt. no. 41 at 9–16. Both GWES and APS rely heavily upon two cases from a sister court in this circuit: Malta Construction Company v. Henningson, Durham & Richardson, Inc., 694 F. Supp. 902, 908 (N.D. Ga. 1988), and American Fletcher Mortgage Company, Inc. v. First American Investment Corp., 463 F. Supp. 186, 195 (N.D. Ga. 1978). See Dkt. No. 37-1 at 3-5; Dkt. No. 41 at 10–13. The parties argue that the disparate results across these two cases are instructive in the present matter. Specifically, GWES argues that APS, like the plaintiff in American Fletcher, should not be afforded third-party beneficiary status, while APS argues that it should be afforded third-party beneficiary status, like the plaintiff in Malta. Dkt. No. 37-1 at 3-5; Dkt. No. 41 at

10

10-13. The core factors distinguishing Malta and American Fletcher, at a high level, seem to be (1) whether a contract involving the defendant contemplated some obligation to the purported third-party beneficiary; and (2) whether the defendant's promise to the third party exhibited the requisite amount of specificity, meaning the agreement's references to the third party fell within specific provisions establishing responsibility rather than vague "indications of obligations" to a non-party to the contract. See Malta, 694 F. Supp. at 908 (comparing American Fletcher, 463 F. Supp. 186).

In Malta, two companies, VSL and Metro, entered into a "purchase order" contract. Id. Pursuant to this contract, VSL promised Metro that it would render some performance to Malta—a third party—by "supply[ing] shop drawings directly to Malta and in the manner required in the purchase order between Malta and Metro." Id. Malta also entered into a contract with Metro, which incorporated that promise from the Metro-VSL contract. Id. When Malta sued VSL to enforce the Metro-VSL contract as a third-party beneficiary, the court found that the "contract between Metro and VSL clearly indicate[d] an intention to benefit Malta." Id. This was because the Metro-VSL contract "set forth obligations" running between defendant-VSL and plaintiff-Malta, and the "references to Malta in the Metro-VSL contract were not merely indications of Metro's obligations to Malta but were in fact specific provisions

11

setting forth VSL's obligations to Malta." Id.

Contrast this with the facts of American Fletcher, which gave rise to the opposite conclusion. 463 F. Supp. at 195. By way of context, American Fletcher involved the acquisition, development, construction, and financing of a condominium complex called "the Woods," where plaintiff American Fletcher Mortgage Company invested in the project, and another company, "Futren," was the owner and developer of the project. Id. at 188. The defendants, one capital company and one investment company, entered into a contract with Futren related to the Woods project. Id. at 188–89. Pursuant to that contract, the defendant-companies were to have "standby loan obligations" running "solely to Futren." Id. at 195. At the same time, Futren had an agreement with American Fletcher pursuant to American Fletcher's role as the primary lender and holder of a first security deed on the Woods. Id.

When American Fletcher brought suit to enforce the loan agreement between Futren and the defendant-companies, the court concluded that American Fletcher did not qualify as a third-party beneficiary eligible to sue to enforce that agreement. Id. Important to the court's analysis, no provision in the loan and stock agreement between defendants and Futren provided for the payment of any funds to American Fletcher—it contemplated obligations running only between Futren and the defendants. Id. While the loan agreement did reference American Fletcher briefly,

12

those references were merely "indications of defendants' recognition" that Futren had obligations to American Fletcher under a separate contract. Id. As such, even though American Fletcher may have derived some benefit from defendants' standby loan obligations to Futren—as these loan obligations provided greater protection to American Fletcher's investment in the Woods— this was merely an "incidental benefit," and "[t]he mere fact that [a party] would benefit from performance of [an] agreement is not alone sufficient" for third-party beneficiary status. Id. (quoting Backus v. Chilivis, 224 S.E.2d 370, 372 (Ga. 1976)) (citing Stewart v. Gainesville Glass Co., Inc., 206 S.E.2d 857 (Ga. Ct. App. 1974), aff'd, 212 S.E.2d 377 (Ga. 1974)). Put differently, there is a distinction between a contract that explicitly creates obligations running to a third party (Malta) and one that merely acknowledges obligations to a third party which already exist (American Fletcher). 694 F. Supp. at 908; 463 F. Supp. at 195.

Turning back to the instant case, APS contends that it is reasonable to infer that the contract between GWES and the County, like the agreement in Malta, sets forth GWES's obligation to provide direct benefits to APS. Dkt. No. 41 at 10-11. Specifically, APS alleges that, pursuant to the County-GWES contract, GWES was responsible for "inspecting, testing, and reviewing APS's work on the project; supervising the construction process, including deviations in scope and change orders; reviewing APS's payment

13

applications; and submitting final closeout items including a Statement of Financial Expenditures and contractor invoices." Dkt. No. 35 ¶ 12; see also Dkt. No. 41 at 9–10. The proposal as incorporated into the professional services agreement aligns with this contention, providing that "[d]uring the construction process, GWES will be on site daily to review installation quality and answer questions as schedules dictate." Dkt. No. 27-1 at 6. The proposal also indicates that GWES "will review RFI's, pay requests, final punch lists submitted by the Contractor and submit final closeout items to the County for review and acceptance." Id. The project's prime contractor, according to the amended complaint, was APS. Dkt. No. 35 ¶ 10.

Based on these factual allegations—as bolstered by the exhibits properly before the Court—it is reasonable to infer that the contract between the County and GWES created an obligation for GWES to render "some performance" to APS. S.E. Grading, 324 S.E.2d at 779. While it is possible that, as argued by GWES, GWES's promise to "inspect, evaluate, and review" APS's work could be expected to confer a benefit on the County, the fact that another party to an agreement may benefit from an obligation running to a third party, standing alone, does not categorically preclude third-party beneficiary status. See Malta, 694 F. Supp. at 907. In fact, in Malta, Metro stood to benefit from the Metro-VSL agreement as a direct party to the contract because VSL would provide the

14

shop drawings necessary to the project on which Metro was working with Malta, and Malta stood to benefit as a third party because VSL became obligated to submit these shop drawings in a timely manner to ensure the project's progress was not hindered. Id. at 907-08. In sum, both a direct party to the contract and a third party stood to benefit from the same promise, and that third party was still eligible to sue to enforce that promise as a third-party beneficiary. Id.

With this in mind, the allegations in the amended complaint give rise to a potential inference that the County and GWES expected the County to benefit from a professional engineering service company promising to oversee and review work on a project. Dkt. No. 35 ¶ 12. But those same allegations also give rise to another reasonable inference: that the County and GWES expected APS to benefit from this additional oversight, as GWES's presence on site would provide APS with a point of contact to answer questions arising during the construction process and give necessary feedback to APS during construction to ensure its work was of sufficient quality such that it would get paid once the project was completed—payment to APS which was to be further facilitated by GWES's promises to review APS's pay requests and final punch lists and submit final closeout items to the County. Id.; see also Dkt. No. 41 at 10-13 (highlighting the intended pecuniary benefit conferred on APS through the GWES-County

contract). At this procedural juncture, reasonable inferences like these are to be construed in Plaintiff APS's favor. Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018) (quoting Bailey v. Wheeler, 843 F.3d 473, 480 (11th Cir. 2016)).

Finally, bolstering this conclusion are the circumstances surrounding the County-GWES agreement.[4] See Dkt. No. 41 at 13–15. Georgia courts have taken note of "surrounding circumstances" when analyzing the intent of contracting parties with respect to third-party beneficiary status. Buchanan v. Ga. Boy Pest Control Co., Inc., 287 S.E.2d 752, 755 (Ga. Ct. App. 1982) (citing Andrews v. Bickerstaff, 92 S.E.2d 257, 260 (Ga. Ct. App. 1956)). In the County's "Invitation for Bid" document, in which it sought bids from companies willing to work on the road resurfacing project, it indicated that "Questions regarding this project may be directed

---

[4] The Court notes that, generally, "'the intent to create a third-party beneficiary must appear on the face of a contract,' and parol evidence will not be considered in making this determination." Heath v. ILG Techs., LLC, 707 F. Supp. 3d 1371, 1390 (N.D. Ga. 2020) (quoting Perry Golf Course Dev., LLC v. Hous. Auth. of Atlanta, S.E.2d 171, 174 (Ga. Ct. App. 2008)). In other words, "[p]arol evidence cannot confer third-party beneficiary status where the contract itself fails to do so." CDP Event Servs., Inc. v. Atcheson, 656 S.E.2d 537, 540 (Ga. Ct. App. 2008)). As such, the Court concludes that it is improper to dismiss the third-party breach of contract claim based on the face of the County-GWES contract, and the Court notes the circumstances surrounding that agreement in an effort to highlight how those circumstances fall in line with the Court's conclusion. See Coleman v. Arrington Auto Sales & Rentals, 669 S.E.2d 414, 416 (Ga. Ct. App. 2008) (noting how surrounding circumstances may be considered to explain ambiguities or aid in the construction of a contract but not to contradict a contract's unambiguous written terms).

16

in writing to GWES, LLC" who would then answer those questions by April 10, 2024. Dkt. No. 18 at 20. This, again, paints GWES as a "guide" to provide helpful information about the project to the contractor and answer the contractor's questions, a source of information which GWES promised to continue to provide to APS, as the project's prime contractor, during the construction process. Dkt. No. 35 ¶¶ 8, 10, 100; Dkt. No. 27-1 at 6 ("GWES will be on site daily to review installation quality and answer questions as schedules dictate."). With this analysis in mind, GWES's motion to dismiss is **DENIED** as to Count III of the amended complaint, as APS has plausibly alleged that it is a third-party beneficiary of GWES's agreement with the County.

### B.   Count IV: APS's Fraud Claim

GWES also moves to dismiss Count IV of APS's amended complaint, arguing that APS has not pled sufficient facts to satisfy the heightened pleading requirements for a fraud claim.[5] Dkt. No. 37-1 at 5-7. To state a claim for fraud under Georgia law, a plaintiff must "allege facts showing that the defendants knowingly made false statements; that they intended for the

---

[5] APS does not specify the type of fraud it alleges in the amended complaint. However, both parties in their briefing analyze Count IV as a general common law fraud claim arising under Georgia law. Dkt. No. 37-1 at 5; Dkt. No. 41 at 17; Dkt. No. 46 at 3. Nothing in the amended complaint would lead the Court to conclude otherwise. Dkt. No. 35. Accordingly, the claim will be treated as such for the purpose of ruling on GWES's motion to dismiss.

17

plaintiff[] to act or refrain from acting in reliance on those statements; that the plaintiff[] justifiably relied on the false statements; and as a result of their reliance, the plaintiff[] suffered damage." Wylie v. Denton, 746 S.E.2d 689, 695 (Ga. Ct. App. 2013) (citing Maddox v. S. Eng'g Co., 453 S.E.2d 70, 71–72 (Ga. Ct. App. 1994)); see also Sheely v. Bank of Am., N.A., 36 F. Supp. 3d 1364, 1372 (N.D. Ga. 2014) (citing Wylie, 746 S.E.2d at 695). "To be actionable, [a misrepresentation] must relate to an existing fact or past event. Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events." Fuller v. Perry, 476 S.E.2d 793, 796 (Ga. Ct. App. 1996) (citations omitted); see also Shea v. Best Buy Homes, LLC, 533 F. Supp. 3d 1321, 1337 (N.D. Ga. 2021).

Because it hinges on alleged fraudulent misrepresentations, Count IV is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud. See, e.g., Infante v. Bank of Am. Corp., 468 F. App'x 918, 919–20 (11th Cir. 2012) (per curiam) (applying Rule 9(b) to fraud claim). "Determining whether a fraud claimant survives a motion to dismiss requires both an analysis of whether the complaint generally states a claim that is plausible on its face and whether the fraud claim itself satisfies the heightened pleading standard of Fed. R. Civ. P. 9(b)." Lee v. Select Portfolio Servicing, Inc., No. CV 2:19-140, 2020 WL 4505535, at *4 (S.D. Ga. Aug. 5, 2020) (citations omitted); see also Iqbal,

18

556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

To meet the pleading standards contemplated by Rule 9(b), a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (internal quotation marks omitted) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997)); see also Sheely, 36 F. Supp. 3d at 1372–73 (quoting Am. Dental, 605 F.3d at 1291). In other words, the complaint must allege with particularity "the who, what, when, where, how and why of the fraud." C&C Fam. Tr. 04/04/05 ex rel. Cox-Ott v. AXA Eq. Life Ins. Co., 44 F. Supp. 3d 1247, 1254 (N.D. Ga. 2014) (citing Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006)), aff'd sub nom., C&C Fam. Tr. 04/04/05 v. AXA Eq. Life Ins. Co., 654 F. App'x 429 (11th Cir. 2016). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" Ziemba v. Cascade Int'l, Inc.,

19

256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988)).

In its brief in support of its motion to dismiss, GWES points to multiple alleged deficiencies in APS's fraud claim. See Dkt. No. 37-1 at 5-7. First, GWES contends that APS fails to sufficiently allege reliance on any misrepresentations made by GWES to the County because, according to GWES, the amended complaint mistakenly focuses on how the *County* was misled, not how *APS* was misled. Id. at 6. Further, while APS contends that GWES represented that it would "objectively and reasonably evaluate APS's work," dkt. no. 35 ¶ 63, GWES argues that APS failed to provide further clarity as to "when and how" that representation was made, dkt. no. 37-1 at 6. Finally, GWES states that Count IV should be dismissed because Plaintiff purportedly failed to sufficiently allege "what [GWES] has obtained as a consequence of the alleged fraud." Id. at 6-7.

Based on the allegations in the amended complaint, APS's fraud claim seems to stem from both representations to a third party and representations made directly to APS. Dkt. No. 35 ¶¶ 61-78. However, neither attempted basis for APS's fraud claim is pled with sufficient particularity such that Count IV can survive GWES's motion to dismiss. First, with respect to the alleged misrepresentations made by GWES to a third party, APS contends that GWES made misrepresentations to the County regarding the

20

conformity of APS's work, which the County allegedly relied upon "for the purpose of withholding payment from APS." Id. ¶¶ 69–72. Under Georgia law, a plaintiff may "base her fraud claim on a misrepresentation to a third party if the defendant 'having as his objective to defraud the plaintiff, and knowing that the plaintiff will rely upon the third party, fraudulently induces the third party to act in some manner on which the plaintiff relies.'" Shea, 533 F. Supp. 3d at 1338 (alterations adopted) (quoting UWork.com, Inc. v. Paragon Techs., Inc., 740 S.E.2d 887, 898 (Ga. Ct. App. 2013)). However, to the extent APS bases its fraud claim on misrepresentations allegedly made by GWES to the County, APS still must plead fraud with particularity. See Fed. R. Civ. P. 9(b); see also Shea, 533 F. Supp. 3d at 1338.

APS does not clarify with particularity who allegedly misrepresented the nature of APS's work, where these statements occurred, or when the statements occurred, beyond a general statement that the misrepresentation occurred "before APS learned it would not receive final payment." Dkt. No. 35 ¶¶ 67–74; C&C Fam. Tr., 44 F. Supp. 3d at 1254. To the extent APS specifies the subject matter of the alleged misrepresentations—that GWES made misrepresentations "concerning the conformity" of APS's work—the amended complaint does not identify the "precise statements, documents, or misrepresentations" forming the basis of the fraud claim. Am. Dental, 605 F.3d at 1291. Similarly deficient is APS's

21

failure to sufficiently allege the element of reliance. Wylie, 746 S.E.2d at 695. While APS contends that *the County* relied upon GWES's misrepresentations "for the purpose of withholding payment from APS," dkt. no. 35 ¶¶ 69, 73, Georgia courts "make[] clear that when the misrepresentation is made to a third party, the misrepresentation must induce the third party 'to act in some manner *on which [the defrauded party] relies*.'" UWork.com, 740 S.E.2d at 898 (emphasis in original) (quoting Fla. Rock & Tank Lines, Inc. v. Moore, 365 S.E.2d 836, 837 (Ga. 1988)).[6]

The only allegation in the amended complaint which touches on APS's actions following GWES's purported misrepresentations to the County is that APS had "no choice but to take action to pursue

---

[6] Georgia courts have, in a limited set of circumstances, provided for fraud claims where a third party acted in reliance on certain representations if that third party "is in a limited class of persons known to be relying upon [those] representations." Travelers Indem. Co. v. A.M. Pullen & Co., 289 S.E.2d 792, 795 (Ga. Ct. App. 1982). Travelers and similar caselaw on this issue analyze such recovery in the context of "persons performing professional and skilled services"—primarily accountants, a role distinct from GWES's project engineering role in the present case—who may become liable to certain third parties despite the absence of privity between the professional and the third party. Id. APS does not present an argument under this theory in its briefing, and the fraud claim, as alleged in the amended complaint, does not allude to membership in such a "limited class" as its basis. Id.; Dkt. No. 35 ¶¶ 61—78; Dkt. No. 41. Finally, APS's failure to sufficiently identify the statements at issue in Count IV provides additional reason why this theory cannot salvage the otherwise deficient fraud claim: without identifying with particularity what the challenged statements were, or the circumstances surrounding them, APS does not provide enough information for the Court to analyze which third parties, if any, would be expected to rely on such statements.

payment from the County." Dkt. No. 35 ¶ 74. However, this is not action or nonaction in reliance on misrepresentation but a reaction to the County's nonpayment. Id. In other words, while APS alleges it suffered an economic loss of not receiving full payment from the County, leading to this action, APS fails to sufficiently allege that "it was induced to act or refrain from acting as a result of the misrepresentations made to [the] third part[y]." See UWork.com, 740 S.E.2d at 899 (citing Pyle v. Pyle, 531 S.E.2d 738, 741 (Ga. Ct. App. 2000) (holding that plaintiff could not prove reliance where defendant's alleged misrepresentation caused economic loss to plaintiff because it led a third party to not convey property to her)).

Second, with respect to the alleged misrepresentations made by GWES to APS directly, both the portion of the amended complaint's "factual background" which is incorporated into Count IV and Count IV itself allege generally that "GWES represented that it would objectively and reasonably review APS's work product and payment applications," despite having an "undisclosed and nefarious agenda" not to honor this promise. Id. ¶¶ 15, 17, 63–64, 68. APS also alleges that it relied on these representations when it proceeded to perform its work on the road resurfacing project. Id. ¶¶ 16, 64. This suggests that the challenged representations were made by GWES to APS, and APS then relied on them. Id. ¶¶ 15-16, 63-64.

23

However, like the alleged misrepresentations to the County, APS fails to specify the details of the purported fraud with the requisite particularity. For example, while APS identifies the subject matter of the alleged misrepresentations in general terms, dkt. no. 35 ¶¶ 15, 63, the amended complaint does not specify who at GWES made these statements, where the statements were made, or how the statements were made—whether in writing, orally, or through some other means. Am. Dental Ass'n, 605 F.3d at 1291 (requiring "precise statements, documents, or misrepresentations" rather than general summaries of the purported fraud); C&C Fam. Tr., 44 F. Supp. 3d at 1254 (analyzing whether the complaint set out the source of the alleged fraud, where the statements were made, and in what medium they were made); see also Hamilton v. Carecore Nat'l, LLC, No. CV409-116, 2010 WL 768179, at *1 (S.D. Ga. Mar. 4, 2010) (concluding that fraud claim was insufficiently pled where plaintiff alleged that defendant promised to pay wages pursuant to employment agreement but "never intended to honor the . . . agreement"). Further, while APS alleges—again, generally—that these representations occurred at some point "prior to APS commencing its work on the Project," APS provides no additional detail about the timing of the statements. Dkt. No. 35 ¶ 15; C&C Fam. Tr., 44 F. Supp. 3d at 1254 (explaining that pleading fraud with particularity includes a requirement that the complaint establish when the fraudulent statements allegedly occurred);

24

Brooks, 116 F.3d at 1381 (concluding that amended complaint failed to "set forth the time, place, and manner in which any specific predicate act occurred" where plaintiff alleged only generally that the actions had taken place "since 1983").

Despite GWES pointing to many of these deficiencies plaguing the amended complaint, APS contends that it has nonetheless provided enough detail to put GWES on notice of the nature of the fraud claim asserted in Count IV. Dkt. No. 41 at 21–22. The crux of APS's argument stems from a sister court's analysis in GunUp, Inc. v. Urvan, No. 1:20-CV-02340-LMM, 2021 WL 2547662, at *11 (N.D. Ga. Feb. 24, 2021). Dkt. No. 41 at 22. In GunUp, the court indicated that the complaint contained sufficient factual allegations to survive dismissal of its fraud claim, even where "some of Plaintiff's allegations [did] not provide precise times and places of certain alleged misrepresentations." 2021 WL 2547662, at *11. This was because, while certain misrepresentations contained less detail, the amended complaint nonetheless included additional clarity through "seven sub-paragraphs that describe[d] in further detail some of these alleged misrepresentations or omissions, including the documents in which some of these misrepresentations or omissions were made." Id. Here, that additional clarity is not provided. See generally Dkt. No. 35. That being so, while a fraud claim may survive where "some" of the alleged misrepresentations lack precise detail describing the fraud, it does not follow that

25

a fraud claim should survive dismissal where *none* of the alleged misrepresentations are described with the requisite particularity. Id.; GunUp, 2021 WL 2547662, at *11.

Finally, APS contends that GWES's motion to dismiss should be denied because "the factual information about the fraud is particularly within the Defendants' knowledge or control," dkt. no. 41 at 23–24, but this too does not revive its otherwise deficient claim. In support of this contention, APS relies upon another case from a sister court in this circuit: TTCP Energy Finance Fund II, LLC v. Ralls Corp., 255 F. Supp. 3d 1285, 1289 (N.D. Ga. 2017). Dkt. No. 41 at 23. In TTCP, the court stated that "'when specific factual information about the fraud is peculiarly within the defendant's knowledge or control,' the particularity requirement of Rule 9(b) 'may be applied less stringently.'" 255 F. Supp. 3d at 1289 (citing Hill v. Morehouse Med. Assocs., Inc., No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. 2003) (per curiam)); see also Dkt. No. 41 at 23. However, many of the deficiencies in APS's fraud claim, identified supra, are not "peculiarly within the [Defendants'] knowledge or control." Id. For example, regarding APS's attempt to use the alleged misrepresentations to a third party as a basis for Count IV, the amended complaint does not specify how APS itself was induced to act or refrain from acting based on these statements. See UWork.com, 740 S.E.2d at 899; Dkt. No. 35. To the extent the fraud

claim is based on alleged misrepresentations made by GWES to APS directly, APS, as the party on the receiving end of the alleged false statements, would necessarily have access to sufficient information to describe the details of the statements. C&C Fam. Tr., 44 F. Supp. 3d at 1254; Dkt. No. 35.

Therefore, APS fails to allege its fraud claim against GWES in accordance with the Federal Rules of Civil Procedure, despite having already exercised one opportunity to amend the complaint. Dkt. Nos. 1, 35; Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc., 673 F. App'x 925, 930 (11th Cir. 2016) ("We have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so."); see also Sader v. Padron, No. 1:18-CV-22891-UU, 2018 WL 7287159, at *8 (S.D. Fla. Dec. 19, 2018) (dismissing fraud claim with prejudice because plaintiff failed to plead fraud with sufficient particularity despite already having one opportunity to amend a deficient complaint). Accordingly, Count IV of the amended complaint is **DISMISSED** with prejudice.[7]

---

[7] Generally, a dismissal or failure to state a claim pursuant to Rule 12(b)(6) is a judgment on the merits. Eiber, 673 F. App'x at 929 (citations omitted). Judgment on the merits is "presumed to operate as a dismissal with prejudice unless the district court

## II. APS's Motion to Dismiss Count II of the Amended Counterclaim

The County's amended counterclaim lists two counts: breach of contract (Count I), and attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11 (Count II). Dkt. No. 47. APS moves to dismiss only Count II of the amended counterclaim for failure to state a claim. Dkt. No. 51 at 1; Dkt. No. 52. There are three distinct forms of conduct by a party which may authorize an award of fees under O.C.G.A. § 13-6-11: (1) acting in bad faith; (2) being stubbornly litigious; or (3) causing the party seeking fees unnecessary trouble and expense. See Circle Y Constr., Inc. v. WRH Realty Servs., Inc., No. 1:08-CV-1010-TCB, 2008 WL 11334194, at *2 (N.D. Ga. Nov. 13, 2008). A party seeking an award of fees under this statute need not show all three conditions exist; rather, "[i]t is only necessary to the plaintiff's recovery that he show any one of these three conditions exists." City of Gainesville v. Waters, 574 S.E.2d 638, 643-44 (Ga. Ct. App. 2002); see also Circle Y Constr., 2008 WL 11334194, at *2 (same).

In its motion to dismiss, APS contends that Count II should be dismissed because O.C.G.A. § 13-6-11 does not create an independent cause of action, the County is unable to assert a

---

specifies otherwise," and the Court "need not provide specific justification for dismissing with prejudice, as this is the default effect of a proper Rule 12(b)(6) dismissal." Id.; see also Dkt. No. 37-1 at 7 (seeking dismissal with prejudice).

28

counterclaim for expenses from defending a lawsuit, and the County allegedly failed to plausibly allege bad faith, stubborn litigiousness, or unnecessary expenses. See generally Dkt. Nos. 51, 52. The Court holds that neither the lack of an independent cause of action nor the County's status as a counterclaimant are fatal to its request for attorneys' fees under O.C.G.A. § 13-6-11. The Court also concludes that it is premature to dismiss Count II of the amended counterclaim.

First, that O.C.G.A. § 13-6-11 does not create an independent cause of action does not, standing alone, necessitate dismissal of Count II. See Dkt. No. 51 ¶ 7. In fact, while it is true that O.C.G.A. § 13-6-11 "does not create an independent cause of action," Lamb v. Salvage Disposal Company of Georgia, 535 S.E.2d 258, 261 (Ga. Ct. App. 2000), the County may bring a claim under O.C.G.A. § 13-6-11 so long as such a claim is brought "in connection with a separate substantive claim for relief," Tri-State Consumer Insurance Company v. LexisNexis Risk Solutions, Inc., 858 F. Supp. 2d 1359, 1371 (N.D. Ga. 2012) (citing Vogtle v. Coleman, 376 S.E.2d 861, 863 (Ga. 1989)). Here, APS's motion to dismiss seeks dismissal of only Count II, but APS does not contend that the County failed to state a claim for breach of contract in Count I. Dkt. Nos. 51, 52. Because "O.C.G.A. § 13-6-11 depends upon whether [the party seeking such damages] has stated at least one viable substantive claim in its counterclaim," and APS does

29

not seek dismissal of the substantive breach of contract count in the amended counterclaim, the County is not foreclosed from seeking the remedy sought in Count II based on a lack of a standalone cause of action. Tri-State, 858 F. Supp. 2d at 1371.

Second, that the County pursues Count II in a counterclaim does not categorically foreclose its ability to pursue a remedy under O.C.G.A. § 13-6-11, either. In arguing that the County may not recover "expenses incurred in defending a lawsuit," APS states that "O.C.G.A. § 13-6-11 is generally restricted to plaintiffs." Dkt. No. 52 at 14. While there are limits on what types of expenses may be recovered by virtue of O.C.G.A. § 13-6-11, those limits do not foreclose all such recovery as a matter of law when a party seeking it is a defendant-counterclaimant rather than the lawsuit's original plaintiff. See Tri-State, 858 F. Supp. 2d at 1370-71. Rather, the relevant rule is that, "where a defendant asserts an independent counterclaim, he may recover litigation expenses under O.C.G.A. § 13-6-11 in connection with that claim. The defendant is limited, however, to recovering only the portion of his attorney fees allocable to the prosecution of his counterclaim." Whitaker v. Houston Cnty. Hosp. Auth., 613 S.E.2d 664, 668-69 (Ga. Ct. App. 2005) (citations omitted). While this limitation impacts the ultimate calculation of fees a party may collect under O.C.G.A. § 13-6-11—a determination left to the factfinder later in the litigation process—the limitation does not

30

warrant dismissal of Count II at this time. See Glenn v. Fourteen W. Realty, Inc., 313 S.E.2d 730, 733 (Ga. Ct. App. 1984) ("[W]hen a defendant asserts a claim for relief independent of a claim for litigation expenses incurred in defending against a plaintiff's case-in-chief, [O.C.G.A. § 13-6-1] does not automatically operate to bar any recovery by the defendant of litigation expenses incurred in prosecuting such an independent claim." (citing Ballenger Corp. v. Dresco Contractors, 274 S.E.2d 786, 794 (Ga. Ct. App. 1980))).

Third, APS argues that the County fails to plausibly allege "bad faith, stubborn litigiousness, or unnecessary expenses," warranting dismissal of Count II. Dkt. No. 52 at 6-13. Specifically, APS contends that there exists a bona fide controversy between the parties, precluding an award based on stubborn litigiousness or unnecessary expenses, leaving bad faith as the only possible basis for a fee award—which the County, according to APS, failed to plausibly allege. See generally Dkt. Nos. 51, 52. In response, the County contends that APS is asking the Court to "prematurely judge the facts" with respect to both the bona fide controversy and bad faith issues. Dkt. No. 57 at 7-8. The Court declines to dismiss Count II of the amended counterclaim at this time. See generally Dkt. No. 47.

Where a party seeks to recover attorneys' fees based on stubborn litigiousness or unnecessary trouble and expense, an

31

award is authorized only "where the evidence reveals that no bona fide controversy or genuine dispute existed—whether of law or fact, on liability or amount of damages, or on any comparable issue." Wilson v. Redmond Constr., Inc., 860 S.E.2d 118, 123 (Ga. Ct. App. 2021) (citations omitted). "To constitute a 'bona fide controversy,' there must be a 'genuine dispute' of law or fact." Zedan v. Bailey, 522 F. Supp. 3d 1363, 1381 (M.D. Ga. 2021) (quoting Dimambro Northend Assocs. v. Williams, 312 S.E.2d 386, 392 (Ga. Ct. App. 1983)). Generally, "it is for the jury to determine whether there was a bona fide controversy, unless the facts preclude such a finding as a matter of law." Webster v. Brown, 446 S.E.2d 522, 524 (Ga. Ct. App. 1994) (citations and quotation marks omitted); see also FT Glob. Cap., Inc. v. Future Fintech Grp., Inc., No. 1:21-CV-00594-JPB, 2021 WL 5232483, at *6 (N.D. Ga. Nov. 10, 2021).

Here, the County seeks attorneys' fees based on stubborn litigiousness because, according to the amended counterclaim, APS "insisted on litigation despite clear evidence of its own defective performance and despite the County's willingness to allow [APS] to cure the defects without litigation." Dkt. No. 47 ¶ 21. While APS acknowledges that the "determination of whether a bona fide controversy exists" is typically reserved for a jury, it nonetheless contends that the Court should conclude, at the motion to dismiss stage, that there exists a bona fide controversy between

the parties as to the County's basis for withholding payment from APS, precluding a fee award. Dkt. No. 52 at 6–10. But APS cites no record evidence to support such a conclusion at this stage, instead relying upon the allegations in the complaint, its amended answer, and the amended counterclaim—none of which qualify as evidence. Dkt. No. 52 at 6–10 (citing dkt. nos. 35 (operative complaint), 47 (amended answer and amended counterclaim)); Greene v. Bd. of Regents of U. Sys. of Ga., No. CV421-277, 2022 WL 18717414, at *2 (S.D. Ga. Apr. 5, 2022) ("[T]he allegations contained in the Amended Complaint are not evidence." (quoting Jordan v. Comcast Cable Commc'ns Mgmt., LLC, No. 1:14-cv-03622-WSD, 2015 WL 4164826, at *2 (N.D. Ga. July 9, 2015))); Wright v. Farouk Sys., Inc., 701 F.3d 907, 911 n.8 (11th Cir. 2012) ("[P]leadings are only allegations, and allegations are not evidence of the truth of what is alleged."); see also Roy v. Morris, No. 1:22-CV-3927-MHC, 2024 WL 2785317, at *4 (N.D. Ga. Feb. 14, 2024) (rejecting defendants' argument that "bona fide controversies exist" where "[d]efendants cite[d] to no record evidence to support the existence of such a dispute").

Further, APS cites a slew of cases to support its contention that "courts can and do dismiss O.C.G.A. § 13-6-11 claims at the pleading stage," but none of these cited cases involved dismissal of a request for fees under O.C.G.A. § 13-6-11 at the pleading stage. Dkt. No. 59 at 4–5 (citing Nextel S. Corp. v. R.A. Clark

33

Consulting, Ltd., 596 S.E.2d 416, 420 (Ga. Ct. App. 2004) (appeal from bench trial); Anderson v. Cayes, 630 S.E.2d 441, 442 (Ga. Ct. App. 2006) (appeal from jury's separate award of attorneys' fees); Horton v. Dennis, 750 S.E.2d 493, 498 (Ga. Ct. App. 2013) (appeal addressing whether trial court erred in submitting O.C.G.A. § 13-6-11 claim to the jury at trial); Driggers v. Campbell, 543 S.E.2d 787, 791 (Ga. Ct. App. 2000) (appeal from denial of motion for directed verdict); Roy, 2024 WL 2785317, at *4 (summary judgment)).

Based on the limited record evidence at play in this early stage in the litigation process, it is possible that APS could, at a later stage, "show that a bona fide controversy exists, which would preclude an award of attorneys' fees under the 'stubborn litigiousness' and 'causing unnecessary trouble and expense' prongs of the statute." Circle Y Constr., 2008 WL 11334194, at *2 (citing McLeod v. Robbins Ass'n, 579 S.E.2d 748, 750 (Ga. Ct. App. 2003)). However, at this procedural juncture, the mere fact that the parties disagree in their pleadings about the County's basis for withholding payment provides insufficient reason to grant APS's motion to dismiss based on the existence of a bona fide controversy, especially where APS has offered neither adequate evidence nor procedurally comparable authority to support such a conclusion. Compare Dkt. No. 35 with Dkt. No. 47; see also Roy, 2024 WL 2785317, at *4 ("That [d]efendants denied liability and raised affirmative defenses relating to [plaintiff's] alleged

34

negligence in their Answer are insufficient; [m]erely denying liability in [their] Answer is not enough to show that a controversy existed." (citing Mavromatis v. Murphy, No. 1:14-CV-3469-WSD, 2016 WL 722152, at *4 (N.D. Ga. Feb. 18, 2016))). This being so, the Court declines to dismiss Count II on this basis. See FT Glob. Cap., 2021 WL 5232483, at *6 (citing Laddin v. Tauber & Balser, P.C., No. 1:11-CV-2995-AT, 2012 WL 12892430, at *8 (N.D. Ga. June 8, 2012) (denying motion to dismiss claim for attorneys' fees under O.C.G.A. § 13-6-11 where the "allegations pose[d] an issue of fact for later resolution")).

Next, the County also seeks fees under O.C.G.A. § 13-6-11 because APS allegedly acted in bad faith. Dkt. No. 47 ¶¶ 15-20. If there is sufficient evidence that "the defendant has acted in bad faith in the underlying transaction," Grange Mutual Casualty Co. v. Kay, 589 S.E.2d 711, 716 (Ga. Ct. App. 2003), a plaintiff "may recover attorneys' fees under O.C.G.A. § 13-6-11 despite the existence of a bona fide controversy," FT Global Capital, 2021 WL 5232483, at *6. While the Court declines to reach the issue of whether a bona fide controversy exists for the purpose of awarding attorneys' fees based on stubborn litigiousness, the Court holds that—bona fide controversy or not—the County has plausibly alleged bad faith in the underlying transaction. Id.

In the context of O.C.G.A. § 13-6-11, bad faith must be "connected with the transaction and dealings out of which the cause

35

of action arose, rather than bad faith in defending or resisting the claim after the cause of action has already arisen." Dotson v. Dish Network LLC, No. 2:19-CV-00021, 2019 WL 9093522, at *2 (S.D. Ga. June 25, 2019) (quoting In re Equifax, Inc., Customer Data Sec. Breach Litig., 362 F. Supp. 3d 1295, 1344-45 (N.D. Ga. 2019)). Bad faith requires more than routine negligence or poor judgment. Id.; Love v. McKnight, 913 S.E.2d 614, 621 (Ga. 2025). Rather, "the statute imports a 'dishonest purpose' or some 'moral obliquity' and implies 'conscious doing of wrong' and a 'breach of known duty through some motive of interest of ill will.'" Dotson, 2019 WL 9093522, at *2 (citing Equifax, 362 F. Supp. 3d at 1344-45). Like the question of stubborn litigiousness, the existence of bad faith "usually is a jury question, and only in the rare case where there was absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues." Id. (quoting Meunier Carlin & Curfman, LLC v. Scidera, Inc., 324 F. Supp. 3d 1269, 1286 (N.D. Ga. 2018)).

In the amended counterclaim, the County alleges that, under its contract with APS, APS was obligated to perform road resurfacing services in a defect-free manner reflecting industry standards. Dkt. No. 47 ¶¶ 2-3. However, APS allegedly failed to properly apply a "leveling course," a "critical component" of a road resurfacing project which functions to "correct

36

irregularities, provide a uniform surface, and ensure proper bonding of the final asphalt layer." Id. ¶¶ 4–5. Failure to provide a leveling course can allegedly cause "premature pavement failures, uneven road surfaces, inadequate bonding, and accelerated deterioration of the roadway," and the County contends that various defects have already begun to appear in the roadway resurfaced by APS, necessitating costly corrective measures. Id. ¶¶ 6–7.

Importantly, the County also alleges that, before this lawsuit was initiated, it notified APS of the defects in the road resurfacing, including the improper application of the leveling course and the surface failures that occurred as a result. Id. ¶ 16. But even with this notice, an opportunity to inspect its work, and time to remedy the defective work, APS allegedly "refused to take corrective action" to fulfill its contractual obligations. Id. ¶¶ 16–20.

It would be premature to dismiss the County's request for bad faith attorneys' fees based on the allegations in the amended counterclaim, as the County has alleged that APS knew of deficiencies in its road resurfacing work, and of resulting defects, but nonetheless declined to act. Id. ¶¶ 4–11, 16–20; see also Equifax, 362 F. Supp. 3d at 1345 (declining to dismiss claim for litigation expenses under O.C.G.A. § 13-6-11 because plaintiffs "alleged that the [d]efendants knew of severe

deficiencies in their cybersecurity, and of serious threats, but nonetheless declined to act"); Miller v. NextGen Healthcare, Inc., 742 F. Supp. 3d 1304, 1319 (N.D. Ga. 2024) (concluding that plaintiff plausibly stated a claim for litigation expenses premised on bad faith where plaintiff alleged defendant knew of a particular vulnerability in its data network and declined to act to fix it (citing Equifax, 362 F. Supp. 3d at 1345)); Dkt. No. 57 at 8–9. The Court holds that APS's alleged knowledge of the roadway's defects and potential future harm and refusal to act plausibly state a claim for litigation expenses premised on bad faith. Accordingly, APS's motion to dismiss Count II of the County's amended counterclaim, dkt. no. 51, is **DENIED**.

**CONCLUSION**

GWES's motion to dismiss Counts III and IV of the amended complaint, dkt. no. 37, is **GRANTED in part** and **DENIED in part**. Count III is not dismissed, but Count IV is. APS's motion to dismiss Count II of the amended counterclaim, dkt. no. 51, is **DENIED**.

**SO ORDERED** this 7th day of May, 2026.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

38